JUDGE SULLIVAN

12 CIV 3054

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESSE ADELAAR,

                Plaintiff,

-against-

SPROUT FOODS, INC.,

                Defendant.

Case No.:

**COMPLAINT AND JURY DEMAND**

RECEIVED APR 18 2012 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff Jesse Adelaar ("Plaintiff"), for his complaint against defendant Sprout Foods, Inc. ("Defendant" or "Sprout") states as follows:

### SUMMARY OF CLAIMS

1. This case centers on Plaintiff's 2009 investment of $600,000 in Sprout pursuant to a private stock offering, at a price of $1.00 per share.

2. In consideration for Plaintiff's investment, Sprout's president orally agreed that Plaintiff's investment in Sprout would be afforded full ratchet anti-dilution protection. This means that, in the event of subsequent stock issuances by Sprout at a share price lower than $1.00: (i) the share price for Plaintiff's investment would be reduced retroactively to the same lower price of such subsequently issued stock; and (ii) Plaintiff would be issued additional shares of Sprout for his prior $600,000 investment so that the value of Plaintiff's investment in Sprout would remain at $600,000 notwithstanding the decrease in the value of Sprout's stock.

3. When Sprout's lawyers attempted to memorialize this agreement, the writing they drafted erroneously provided Plaintiff only limited anti-dilution protection. This fact was not

understood at the time by either Plaintiff or Sprout's president, both of whom signed the written agreement.

4. Sprout has refused to acknowledge that the written agreement did not reflect the actual agreement intended and entered into orally by its president, and that Plaintiff's investment would be afforded full ratchet anti-dilution protection.

5. Plaintiff's agreement to invest in Sprout was contingent upon Sprout's agreement to give him full ratchet anti-dilution protection.

6. Thus, Plaintiff is entitled, by reason of mutual mistake, to have the written agreement reformed to reflect Sprout's agreement to grant his stock purchase full ratchet anti-dilution protection.

7. And, once the written agreement is so reformed, it is clear that actions by Sprout in issuing stock at a price lower than $1.00 per share, without increasing the number of shares held by Plaintiff pursuant to the full ratchet anti-dilution provision, constitute a breach of the agreement.

## THE PARTIES

8. Plaintiff is a citizen of New York.

9. Sprout is a Delaware corporation with its principal place of business in Georgia.

## JURISDICTION AND VENUE

10. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2), as a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTS

12. In early 2009, Max MacKenzie, then President and CEO of Sprout, had several conversations with Plaintiff about the possibility of his investing in Sprout. At that point in time, Sprout was engaged in an initial round of non-founder financing, through the issuance of stock defined as Series A preferred stock.

13. Mr. MacKenzie and Plaintiff initially discussed the possibility of his investing approximately $500,000 in Sprout via the Series A financing. By the beginning of May 2009, Sprout was in urgent need of working capital to finance inventory for new customer relationships and, according to Mr. MacKenzie, it became critical for the company's liquidity and growth plans to obtain this investment from Plaintiff.

14. Though Plaintiff was willing to make a substantial investment in Sprout, he was only willing to do so if he was afforded full ratchet anti-dilution protection, both as to Series A and future financing rounds. That is, Plaintiff insisted that if Sprout issued additional stock at a lower share price than the price paid by Plaintiff, additional shares of Sprout would be issued to Plaintiff to ensure that the value of his investment would not be diluted.

15. On May 7, 2009, Plaintiff wired his $500,000 investment to Sprout. Prior thereto, and as consideration for Plaintiff's investment, Mr. MacKenzie orally agreed, on behalf of Sprout, that as a condition for Plaintiff's investment, he would receive the full ratchet anti-dilution protection he required. As Sprout's President, Mr. MacKenzie had actual and apparent authority to make this agreement on Sprout's behalf.

16. On June 18, 2009, Plaintiff made an additional $100,000 investment in Sprout, also as part of the Series A round. This additional investment was also made by Plaintiff on the express agreement by Mr. MacKenzie, on behalf of Sprout, that it would be afforded the same

full ratchet anti-dilution protection to which Mr. MacKenzie had agreed concerning Plaintiff's initial $500,000 investment.

17.     The Series A preferred stock was priced at $1.00 per share. Thus, Plaintiff's $600,000 investment in Sprout acquired 600,000 Series A preferred shares therein.

18.     Even though the full $600,000 came from Plaintiff, he had Sprout put 250,000 of the shares in the name of his sister, Robyn Adelaar. Thus, Sprout's records have always reflected that Plaintiff owns 350,000 Series A shares, and that Ms. Adelaar owns 250,000 Series A shares.

19.     Subsequent to Plaintiff's wire of the initial $500,000 on May 7, 2009, Mr. MacKenzie spoke with Greg Torborg and Andrew Samaan, both lawyers for Sprout, about memorializing the Agreement. A written agreement dated May 8, 2009 was then drafted by Sprout's attorneys which purported to memorialize the oral agreement between Sprout and Plaintiff (the "Written Agreement"). The Written Agreement limited the anti-dilution protection afforded Mr. Adelaar to Series A stock issuances, but not to future rounds of stock issuances by Sprout, such as the Series B, Series C and Series D issuances described below.

20.     Both Plaintiff and Mr. MacKenzie executed the Written Agreement without understanding that the anti-dilution protection recited therein was limited to Series A stock issuances. Rather, they both believed that the Written Agreement provided Plaintiff with full ratchet anti-dilution protection on all subsequent stock issuances by Sprout.

21.     Thus, the Written Agreement did not reflect the oral agreement reached by Plaintiff with Mr. MacKenzie on Sprout's behalf.

22.     Sprout has refused to honor the full ratchet anti-dilution protection that Mr. MacKenzie agreed to afford Plaintiff's investment.

80578.1

23. Specifically, Sprout raised additional funds through issuance of a new class of stock denominated as Series B stock. Although the Series B stock was initially valued at $1.50 per share, the ultimate value of the Series B stock issued was $.50 per share.

24. Thereafter, Sprout raised additional funds through issuances of Series C and Series D stock. The per share value for both of these rounds of stock issuances was $.255 per share.

25. Plaintiff did not receive full ratchet anti-dilution protection on his investment as part of either the Series B, Series C or Series D offerings.

26. Had Sprout honored its agreement in this regard, then upon the Series B stock offering valuing Sprout at $.50 per share, Plaintiff's purchase price for his $600,000 investment would have been reduced from $1.00 to $.50. Concurrent therewith, Plaintiff would have been issued 600,000 additional shares in Sprout, so that he would have then owned 1,200,000 shares in Sprout. Valued at $.50 per share, Plaintiff's investment would have remained worth $600,000, as required.

27. Further, had Sprout honored its agreement with regard to the Series C stock offering valuing Sprout at $.255 per share (or, at the very latest, upon the Series D stock offering at the same price), Plaintiff's per share purchase price for his $600,000 investment would have been further reduced to $.255. Concurrent therewith, Plaintiff would have been issued 1,152,941 additional shares in Sprout, so that he would have ended up with 2,352,941 shares in Sprout. Valued at $.255 per share, Plaintiff's investment in Sprout would have remained worth $600,000, as required.

28. Instead, Plaintiff still only owns 600,000 Series A shares of Sprout. Valued at $.255 per share, his investment is now only worth $153,000.

## FIRST CLAIM
(Reformation of Contract)

29. Plaintiff repeats and realleges the allegations made in Paragraphs 1 through 28 above.

30. Mr. MacKenzie, Sprout's President, agreed that as consideration for Plaintiff's $600,000 investment in Sprout, the Series A stock issued pursuant thereto such would be afforded full ratchet anti-dilution protection on all subsequent stock issuances by Sprout.

31. The Written Agreement does not reflect the oral agreement reached, in that it afforded Plaintiff anti-dilution protection only as to the issuance of Series A stock, but not as to issuances of additional classes of stock by Sprout.

32. Both Plaintiff and Mr. MacKenzie intended that the Written Agreement should provide Plaintiff's investment in Sprout with full ratchet anti-dilution protection.

33. That the Written Agreement limits Plaintiff's anti-dilution protection was unknown to both parties thereto, constituting a mutual mistake by Plaintiff and Sprout.

34. According, to reflect the true intent of Plaintiff and Sprout, the Written Agreement should be reformed to provide Plaintiff's investment in Sprout with full ratchet anti-dilution protection on all subsequent stock issuances by Sprout.

## SECOND CLAIM
(Breach of Contract)

35. Plaintiff repeats and realleges the allegations made in Paragraphs 1 through 34 above.

36. The Written Agreement, as reformed to reflect the parties' mutual intent to grant Plaintiff full ratchet anti-dilution protection, constitutes a valid and enforceable agreement.

6

80578.1

37. By diluting the value of Plaintiff's ownership interest in Sprout as described above, Sprout directly, materially and willfully breached the Written Agreement as reformed.

38. The foregoing breach by Sprout substantially and fundamentally defeats the purpose of the Written Agreement, as reformed.

39. Accordingly, Plaintiff is entitled to rescind the Written Agreement as reformed, and to recover back from Sprout the $600,000 paid by Plaintiff pursuant to the Written Agreement as reformed.

40. In the alternative, and only to the extent that Plaintiff is not allowed to rescind the Written Agreement as reformed, Plaintiff is entitled to recover from Sprout damages in an amount to be proven at trial, which is currently expected to be no less than $447,000 – the loss in value of Plaintiff's investment in Sprout caused by its breach of the Written Agreement as reformed, based on the current share price of $.255.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury of his claims.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Sprout as follows:

a. On his First Claim, for an order reforming the Written Agreement to provide Plaintiff with full ratchet anti-dilution protection as to his investment in Series A preferred stock in Sprout;

b. On his Second Claim, for an order: (i) rescinding the Written Agreement by reason of Sprout's breach thereof and awarding Plaintiff $600,000 in damages as a result of such rescission; or (ii) in the alternative, and only in the event that the Court does not so rescind the Written Agreement, an order awarding Plaintiff an amount be proven at trial, which is currently believed to be no less than $447,000; and

7

80578.1

    c.  Awarding Plaintiff such other and further relief as this Court deems just and proper.

Dated: New York, New York
       April 18, 2012

                BERGER & WEBB, LLP

By: _____
       Steven A. Berger (SB-2038)
       Jonathan Rogin (JR-9800)

*Attorneys for Plaintiff*
7 Times Square, 27th Floor
New York, New York  10036
212-319-1900
sberger@bergerwebb.com
jrogin@bergerwebb.com