UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JESSE ADELAAR,

                               12 CIV 3054 (FM)

                 Plaintiff,
  -against-

SPROUT FOODS, INC.,

                 Defendant.
-------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT
## OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

                                                   Westermann Sheehy Keenan
                                                   Samaan and Aydelott, LLP
                                                   The Omni Building
                                                   333 Earle Ovington Blvd.
                                                   Suite 702
                                                   Uniondale, New York 11553
                                                   *Attorneys for Defendant*

Peter S. Samaan, Esq.
Linc C. Leder, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 2

STATEMENT OF FACTS .................................................................................................. 2

ARGUMENT ....................................................................................................................... 3

    I.    The Relevant Language of the Parties' Agreement is Clear and Unambiguous and Should Be Interpreted Without Resort to Extrinsic Evidence and Enforced as Written ............................................................. 5

    II.    Adelaar Is Not Entitled to Reformation ........................................................ 8

        A.    Adelaar Must Prove His Entitlement to Reformation By Clear and Convincing Evidence of Mutual Mistake or Scrivener's Error and the Parties Original Intent ............................................................. 8

        B.    Adelaar Must Not Have Unclean Hands ......................................... 13

CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

Agati v. Agati, 92 A.D.2d 737, 461 N.Y.S.2d 95..................................................................13

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) ..........................................................3

Chase Manhattan Bank, N.A. v. American Nat'l Bank & Trust Co.,
93 F.3d 1064, 1073 (2d Cir. 1996).........................................................................................5

Cleveland Wrecking Co. v. Hercules Construction Corp.,
23 F. Supp.2d 287, 291 (E.D.N.Y. 1998)................................................................................5

DiSilva v. Musso, 53 N.Y.2d 543, 550 (1981) .........................................................................8

EGW Temporaries, Inc. v. RLI Ins. Co., 83 A.D.3d 1481, 919 N.Y.S.2d 752
(4th Dep't 2011) ....................................................................................................................11

Federal Deposit Ins. Corp. v. Herald Square Fabrics Corp., 81 A.D.2d 168, 180
(2d Dep't 1981) ......................................................................................................................5

George Backer Management Corp. v. Acme Quilting Co., Inc.,
46 N.Y.2d 211, 218 (1978).........................................................................................8, 9, 10

Grosch v. Kessler, 256 N.Y. 477 (1931) ................................................................................13

Haskins v. Thomajan, 99 A.D.2d 463, 470 N.Y.S.2d 41 (1984) ..........................................13

Hay v. Star Fire Insurance Co., 77 N.Y. 235 (1879) .............................................................13

Humble Oil & Refining Co. v. Jaybert Esso Service Station, Inc.,
30 A.D.2d 952, 952, 294 N.Y.S.2d 190, 192 (1st Dep't 1968) ...........................................12

Intercontinental Planning, Ltd. v. Daystrom, Inc., 24 N.Y.2d 372, 379 (1969)...................6

International Multifoods Corp. v. Commercial Union Ins. Co.,
98 F. Supp. 2d 498, 506 (S.D.N.Y. 2000) ............................................................................12

Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir.1986).....................................................3

Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).....................................................3

Loyalty Life Insurance Co., 214 A.D.2d 297, 632 N.Y.S.2d 901 (1995) ..........................13

Marine Midland Bank, N.A. v. Embassy East, Inc.,
160 A.D.2d 420, 422, 553 N.Y.S.2d 767, 769 (1st Dep't 1990) ......................................12

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ................3

McRory v. Craft Architectural Metals Corp., 112 A.D.2d 358,
491 N.Y.S.2d 808 (2d Dep't 1985)......................................................................................11

Muscarella v. Muscarella, 93 A.D.2d 993, 461 N.Y.S.2d 621 (1983) ..............................13

Namad v. Salomon Inc., 74 N.Y.2d 751, 753 (1989) ..........................................................6

Nash v. Kornblum, 12 N.Y.2d 42, 46 (1962) .......................................................................9

Pahl Equipment Corp., 182 A.D.2d 22, 23, 588 N.Y.S.2d 8 (1st Dep't 1992) ............9, 10

Ross v. Food Specialties, Inc., 6 N.Y.2d 336, 341 (1959)............................................9, 10

Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,
7 F.3d 1091, 1094 (2d Cir. 1993)..........................................................................................5

Seagirt Realty Corp. v. Chazanof, 13 N.Y.2d 282, 285-286 (1963) ................................13

South Fork Broadcasting Corp. v. Fenton, 141 A.D.2d 312, 315 (1st Dep't 1988).........10

Surlak v. Surlak, 95 A.D.2d 371, 380, 466 N.Y.S.2d 461 (2d Dep't 1983) .......................9

Unisys Corp. v. Hercules Inc., 224 A.D.2d 365, 367 (1st Dep't 1996)...............................5

W.W.W. Associates, Inc. v. Giancontieri, 77 N.Y.2d 157, 162 (1990)................................5

**Rules**

Fed. R. Civ. P. 56(c) ........................................................................................................2, 3

7 N.Y.Jur. 2d Attorneys at Law §248 ................................................................................11

720 N.Y.Jur. Equity, §107 ..................................................................................................13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JESSE ADELAAR,

                                                                                      12 CIV 3054 (FM)

                    Plaintiff,
   -against-

SPROUT FOODS, INC.,

                    Defendant.
-----------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT
## OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Defendant, Sprout Foods, Inc. (Sprout), by counsel, submits this Memorandum of Law, in support of its motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment against Jesse Adelaar (Adelaar). There is no genuine issue as to any material fact, and Defendant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c).

### STATEMENT OF FACTS

The undisputed, material facts are set forth in Defendant's Statement of Undisputed Material Facts pursuant to Local Civil Rule 56.1 (Defendant's 56.1 Stmt.), the declaration of Peter S. Samaan, dated November 16, 2012 (Peter Samaan Decl.), the declaration of Andrew W. Samaan, dated November 16, 2012 (Andrew Samaan Decl.), and the declaration of David B. "Scott" Schiff, dated November 15, 2012 (Schiff

Decl.) all of which are submitted herewith, all exhibits and papers annexed thereto, and all prior submissions related to this action.

## ARGUMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987). Under Rule 56, conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). Indeed, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587. Absent "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Rule 56(c) mandates the entry of summary judgment. Celotex, 477 U.S. at 322.

Adelaar alleges that Sprout's president orally agreed that Adelaar's investment in Sprout would be afforded full ratchet anti-dilution protection (Full Ratchet). Adelaar alleges that the written agreement (Agreement) does not reflect the oral agreement reached in that it afforded Adelaar anti-dilution protection only as to the issuance of Series A stock, but not as to issuances of additional classes of stock by Sprout.

MEMORANDUM OF LAW – PAGE 3

Full Ratchet is an extraordinary type of anti-dilution protection that views all subsequent stock issued at a lower price than what the investor's purchase price was as if they were the same. Full Ratchet can have a draconian effect on the common stock. Under Full Ratchet, the price is ratcheted down to the lowest price at which stock is sold after the initial issuance, regardless of how many shares are issued at that lower price.

By way of example, if a company issues one million shares of common stock at one dollar per share, one million shares of Series A preferred stock at one dollar per share, and just one share of Series B preferred stock at 50 cents the Series A shares would be ratcheted down to 50 cents and those investors would receive twice as many shares for no extra consideration. This would result in significant dilution to the founders and other common stockholders. In other words, the company bears all of the downside price risk while there is no limit on the upside potential for the investors.

Here, the facts establish that the parties entered into the Agreement whereby Sprout agreed to issue Adelaar 600,000 shares of Series A stock at the price of $1.00 per share, in exchange for an investment of $600,000. The facts show that the Agreement limited the anti-dilution protection afforded Adelaar to Series A stock issuances. The facts also show that the parties intended the Agreement to set forth the entire understanding of the parties with respect to the subject matter thereof. In sum, there are no factual issues in dispute and, as such, summary judgment is proper.

I. **THE RELEVANT LANGUAGE OF THE PARTIES' AGREEMENT IS CLEAR AND UNAMBIGUOUS AND SHOULD BE INTERPRETED WITHOUT RESORT TO EXTRINSIC EVIDENCE AND ENFORCED AS WRITTEN**

A court may grant summary judgment if the agreement is unambiguous and conveys a definite meaning, or the contract is ambiguous but there is no extrinsic evidence of the parties' intent. Chase Manhattan Bank, N.A. v. American Nat'l Bank & Trust Co., 93 F.3d 1064, 1073 (2d Cir. 1996); Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1094 (2d Cir. 1993).

The principles of contract interpretation that govern the determination of this action are well settled. When called upon to interpret a contract, a court should first attempt to determine the parties' intent based upon the language of the contract. "'[W]here the intentions of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law, and ... no trial is necessary to determine the legal effect of the contract.'" Unisys Corp. v. Hercules Inc., 224 A.D.2d 365, 367 (1st Dep't 1996), quoting Federal Deposit Ins. Corp. v. Herald Square Fabrics Corp., 81 A.D.2d 168, 180 (2d Dep't 1981), appeal dismissed, 55 N.Y.2d 602 (1981); accord Cleveland Wrecking Co. v. Hercules Construction Corp., 23 F. Supp.2d 287, 291 (E.D.N.Y. 1998), aff'd, 198 F.3d 233 (2d Cir. 1999). As explained by the Court of Appeals:

> A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.
>
> W.W.W. Associates, Inc. v. Giancontieri, 77 N.Y.2d 157, 162 (1990).

MEMORANDUM OF LAW – PAGE 5

Moreover, extrinsic evidence as to what supposedly was intended but not stated (or misstated) is inadmissible to add to or vary the terms of the written contract. Id. at 162 (rejecting plaintiff's claims for specific performance and granting summary judgment for the defendant, on the basis that the sale contract at issue was clear and unambiguous in granting the defendant the right to cancel the sale). Nor should extrinsic evidence be considered in order to create an ambiguity in an otherwise complete, clear and unambiguous contract. Id. at 163; See also Namad v. Salomon Inc., 74 N.Y.2d 751, 753 (1989); Intercontinental Planning, Ltd. v. Daystrom, Inc., 24 N.Y.2d 372, 379 (1969).

Here, the resort to extrinsic evidence is unnecessary to determine the intent of the parties to the Agreement because its terms are clear and unambiguous. Specifically, the Agreement provides that as of May 8th, 2009, Adelaar "invested $600,000 (the "Investment") in Series A Preferred Stock (the "Stock") of Sprout at $1.00 per share (the "Purchase Price")". Defendant's Rule 56.1 Stmt. ¶ 2.

The Agreement provides that in consideration of the Investment, Sprout is providing Adelaar with the following Investment protection:

> Subject to the provisions of Paragraphs 2 and 3 hereof, in the event that the Company [Sprout] shall issue or sell additional shares of Stock for a consideration per share less than the Purchase Price on the Effective Date (as adjusted for stock dividends, subdivisions, combinations, recapitalizations and the like in effect immediately prior to the issuance or sale of such shares), then in such event, the Purchase Price shall be reduced, concurrently with such issue, to a Purchase Price equal to the net consideration per share of Stock received by the Company in respect of such issuance. An adjustment made pursuant to this paragraph shall be made on the next business day following the date on which any such issuance is made and shall be retroactive immediately after the close of business on such date.

MEMORANDUM OF LAW – PAGE 6

Defendant's Rule 56.1 Stmt. ¶ 3.

As set forth above, and in the first paragraph of the Agreement, the term "Stock" is defined as the Series A Preferred Stock in which Adelaar invested $600,000. The next paragraph of the agreement provides Adelaar with investment protection in the event Sprout issues or sells additional shares of Stock, as that term is defined therein.

The Agreement further states:

> <u>Miscellaneous</u>.  This Agreement shall be binding on the parties whose signatures appear below and their successors and assigns.  This Agreement may be executed in counterparts.  This Agreement may not be modified or amended except by an instrument in writing signed by the party against whom enforcement is sought.  Either party may, by an instrument in writing, waive compliance by the other party with any term or provision of this Agreement.  The waiver by a party of a breach of any provision of this Agreement shall not be a waiver of any subsequent breach.  This Agreement sets forth the entire understanding of the parties with respect to the subject matter hereof. This Agreement shall be construed and governed in accordance with the internal, substantive laws of the State of New York.

Defendant's Rule 56.1 Stmt. ¶ 4.

The language set forth above makes it abundantly clear that the parties intended to limit the anti-dilution protection afforded Adelaar to Series A stock issuances, but not to future rounds of stock issuances by Sprout. Defendant's Rule 56.1 Stmt. ¶ 10. Adelaar's contrary position is without merit.  No reasonable interpretation of the fully integrated Agreement supports Adelaar's assertion that the Agreement did not reflect the oral agreement reached by Plaintiff and Sprout providing Adelaar with Full Ratchet. Schiff Decl., ¶ 3.

Because the Agreement at issue is clear and unambiguous, its terms should be enforced according to their plain meaning without resort to extrinsic evidence to determine the parties' intent.

## II.   ADELAAR IS NOT ENTITLED TO REFORMATION

Adelaar cannot prevail on its reformation argument for a number of reasons. First, he must come forward with clear and convincing proof of mutual mistake, fraudulently induced unilateral mistake or scrivener's error. Adelaar does not allege fraud, thus his only argument is that the Agreement must be reformed because of a mutual mistake or scrivener's error. That argument is belied by the facts set forth above and in Defendant's Rule 56.1 Stmt. Moreover, since reformation is an equitable remedy, Adelaar must not have unclean hands, and as discussed below, Adelaar cannot show that his hands are clean.

### A. Adelaar Must Prove His Entitlement To Reformation By Clear And Convincing Evidence Of Mutual Mistake Or Scrivener's Error And The Parties Original Intent.

The Court of Appeals has stated: "Once a contract is made, only in unusual circumstances will a court relieve the parties of abiding by it." George Backer Management Corp. v. Acme Quilting Co., Inc., 46 N.Y.2d 211, 218 (1978). See also, DiSilva v. Musso, 53 N.Y.2d 543, 550 (1981) ("Under long accepted principles one who signs a document is, absent fraud or other wrongful act of the other contracting party, bound by its contents").

Thus, "[i]n order to obtain reformation of a written instrument it must be shown that 'the parties came to an understanding, but in reducing it to writing, through mutual

MEMORANDUM OF LAW – PAGE 8

mistake, or through mistake on one side and fraud on the other, they omitted some provision agreed upon, or inserted one not agreed upon." William P. Pahl Equipment Corp. v. Kassis, 182 A.D.2d 22, 29, 588 N.Y.S.2d 8 (1st Dep't 1992), quoting Curtis v. Albee, 167 N.Y. 360, 364 (1901). See also George Backer Management, 46 N.Y. 2d at 219 ("Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties"); Surlak v. Surlak, 95 A.D.2d 371, 380, 466 N.Y.S.2d 461 (2d Dep't 1983) ("A claim for reformation, generally, must be based on an allegation of mutual mistake or fraudulently induced, unilateral mistake [citation omitted]").

Moreover, reformation is not a mechanism by which the courts can simply rewrite a contract and relieve a party from an agreement it wishes it did not make. "Reformation is not designed for the purpose of remaking the contract agreed upon but, rather, solely for the purpose of stating correctly a mutual mistake shared by both parties to the contract; in other words, it provides an equitable remedy for use when it clearly and convincingly appears that the contract, as written, does not embody the true agreement as mutually intended. [citation and quotations omitted]." Nash v. Kornblum, 12 N.Y.2d 42, 46 (1962). See also Ross v. Food Specialties, Inc., 6 N.Y.2d 336, 341 (1959) (same); William P. Pahl Equip. Corp. v. Kassis, 182 A.D.2d 22, 23, 588 N.Y.S.2d 8 (1st Dep't 1992)(Reformation is not a mechanism to interject into the writings terms or provision not agreed upon or suggested by one party but rejected by the other).

In order to survive summary dismissal, Adelaar must demonstrate that the parties' actual intent was to provide Full Ratchet, and that their intent was not clearly and accurately expressed in the Agreement due to mutual mistake or scrivener's error. Because there is a strong presumption in favor of enforcing written agreements, Adelaar must make this showing by clear and convincing evidence:

> But to overcome the heavy presumption that a deliberately prepared and executed written instrument manifested the true intention of the parties, evidence of a very high order is required.... And well that is, for freedom to contract would not long survive courts' ready remaking of contracts that parties have agreed upon.... All the more so when a litigant seeks to invoke the power of the court, not merely to sever the contractual relationship between the parties, but, as here, to continue the relationship in a modified form. It follows that a petitioning party has to show in no uncertain terms, not only that a mistake or fraud exists, but also exactly what was really agreed upon between the parties....

George Backer Management, 46 N.Y. 2d at 219 (citations omitted). See also Ross, 6 N.Y.2d at 341 ("We have consistently and repeatedly held that before reformation can be granted, a plaintiff 'must establish his right to relief by clear, positive and convincing evidence. Reformation may not be granted upon a probability nor even upon a mere preponderance of evidence, but only upon a certainty of error' ..." [citations and quotations omitted]); Pahl Equipment Corp., 182 A.D.2d at 23 ("The burden upon a party seeking reformation is a heavy one since it is presumed that a deliberately prepared and executed written instrument accurately reflects the true intention of the parties: '[T]he proponent of reformation must show in no uncertain terms not only that mistake or fraud exists, but exactly what was really agreed upon between the parties' "), quoting South Fork Broadcasting Corp. v. Fenton, 141 A.D.2d 312, 315 (1st Dep't 1988), appeal dismissed, 73 N.Y.2d 809 (1988).

Where the error is not in the agreement itself but in the instrument that embodies the agreement; a scrivener's error, equity may interfere to compel the parties to execute the agreement they have actually made rather than enforce the instrument in its mistaken form. EGW Temporaries, Inc. v. RLI Ins. Co., 83 A.D.3d 1481, 919 N.Y.S.2d 752 (4th Dep't 2011). Reformation is permitted where the parties had a real and existing agreement on particular terms and subsequently found themselves signatories to a writing that did not accurately reflect that agreement. Harris v. Uhlendorf, 24 N.Y.2d 463 (1969); Ribacoff v. Chubb Group of Ins. Companies, 2 A.D.3d 153, 770 N.Y.S.2d 1 (2003).

There is no evidence, much less the requisite clear and convincing evidence, of mutual mistake or scrivener's error with respect to the anti-dilution protection provision. The parties to the Agreement are both highly sophisticated and experienced investors who got exactly what they bargained for. It is well settled New York law that the court should not disturb the clear and unambiguous terms of a fully integrated contract. Where, as here, the parties to the contract are experienced businesspeople, they are charged with knowledge and understanding of the terms of the agreement that they prepared and executed, and where, as here, the parties have fully performed all obligations thereunder, the argument that the agreement should be reformed is disingenuous. 7 N.Y. Jur. 2d Attorneys at Law § 248; citing McRory v. Craft Architectural Metals Corp., 112 A.D.2d 358, 491 N.Y.S.2d 808 (2d Dep't 1985).

Similarly, Adelaar's request to reform the Agreement because it is not consistent with a prior oral agreement must fail. Requests to reform or rescind a written

MEMORANDUM OF LAW – PAGE 11

agreement because it is not consistent with a prior oral agreement are not lightly granted for they present an evasion of the parol evidence rule. <u>International Multifoods Corp. v. Commercial Union Ins. Co.</u>, 98 F. Supp. 2d 498, 506 (S.D.N.Y. 2000); <u>Marine Midland Bank, N.A. v. Embassy East, Inc.</u>, 160 A.D.2d 420, 422, 553 N.Y.S.2d 767, 769 (1st Dep't 1990) ("we find it incredible that the individual respondents, who were represented in the financing request as being experienced businessmen, would have relied on these alleged oral representations which plainly differed from the terms of the face of the note"); <u>Humble Oil & Refining Co. v. Jaybert Esso Service Station, Inc.</u>, 30 A.D.2d 952, 952, 294 N.Y.S.2d 190, 192 (1st Dep't 1968) ("We find it incredible that this sophisticated businessman relied on the alleged misrepresentations. Since the written instrument contains terms different from those allegedly orally represented, and [the defendant] is presumed to have read the writing, he may not claim he relied on the representations").

Here, the record is devoid of any admissible evidence indicating that the parties negotiated anything other than what is reflected in the Agreement. Sprout did not provide Full Ratchet to Adelaar, or to any other investor, and would not under any circumstances provide any shareholder with this extraordinary type of anti-dilution protection. Schiff Decl., ¶ 3. Adelaar's allegation of mutual mistake is illusory and has no basis in fact or law.

The crux of Adelaar's reformation claim is that he did not receive the extraordinary Full Ratchet anti-dilution protection that the parties had orally agreed to, even though the Agreement expressly limits the anti-dilution protection afforded to

MEMORANDUM OF LAW – PAGE 12

Adelaar to Series A stock issuances, and not to future rounds of stock issuances by Sprout. Such is the bargain they struck. Reformation is not a mechanism by which the court may rewrite an agreement based upon one side's self-serving, post-contractual perceptions of fairness.

### B. Adelaar Must Not Have Unclean Hands

A party seeking an equitable remedy must do equity, i.e., he must come into court with clean hands. See, Grosch v. Kessler, 256 N.Y. 477 (1931); Haskins v. Thomajan, 99 A.D.2d 463, 470 N.Y.S.2d 41 (1984); Muscarella v. Muscarella, 93 A.D.2d 993, 461 N.Y.S.2d 621 (1983). Any misconduct "which would be condemned and pronounced wrongful by honest and fairminded men, will be sufficient to make the hands of the applicant unclean" (20 N.Y.Jur, Equity, §107) as long as the conduct pertains to the matter in litigation. See, Agati v. Agati, 92 A.D.2d 737, 461 N.Y.S.2d 95 aff'd; Seagirt Realty Corp. v. Chazanof, 13 N.Y.2d 282, 285-286 (1963).

Moreover, inasmuch as reformation is an equitable matter, the length of the delay in discovering the mistake will also be considered by the Court. See, Loyalty Life Ins. Co. v. Fredenberg, 214 A.D.2d 297, 632 N.Y.S.2d 901 (1995); See also, Hay v. Star Fire Insurance Co., 77 N.Y. 235 (1879).

Here, Adelaar had the Agreement in its possession for almost three years and only after Sprout issued Class B, C, and D shares did it seek full ratchet anti-dilution protection across all classes of stock, on all subsequent stock issuances by Spout, by positing its reformation argument. Adelaar's negligence, or conscious ignorance, regarding the actual limited anti-dilution protection provided in the Agreement bars

MEMORANDUM OF LAW – PAGE 13

reformation. In the exercise of ordinary care, Adelaar knew, should have known or could easily have ascertained the anti-dilution protection afforded him by Sprout in the Agreement and Adelaar cannot now, as a matter of law, be entitled to reformation.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant Defendant's motion for summary judgment.

Dated:   November 16, 2012
         Uniondale, New York

                                        SPROUT FOODS, INC.

                                        By: _____
                                             Peter S. Samaan

Peter S. Samaan, Esq.
Linc C. Leder, Esq.
WESTERMANN SHEEHY KEENAN
SAMAAN & AYDELOTT, LLP
The Omni Bldg., Suite 702
333 Earle Ovington Blvd.
Uniondale, New York 11553
(516) 794-7500

Counsel for defendant,
Sprout Foods, Inc.