UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JESSE ADELAAR,

                                                    Plaintiff,

-against-

SPROUT FOODS, INC.,

                                                    Defendant.
-------------------------------------------------------------x

12 CIV 3054 (FM)

DEFENDANT'S RULE 56.1
STATEMENT IN SUPPORT OF
IT'S MOTION FOR
SUMMARY JUDGMENT

## DEFENDANT'S RULE 56.1 STATEMENT IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, by its attorneys Westermann Sheehy Keenan Samaan & Aydelott, LLP, pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, hereby submits the following statement of material facts as to which Defendant contends there is no genuine issue to be tried:

1. On or about May 8, 2009, Jesse Adelaar (Adelaar) and Sprout Foods, Inc. (Sprout) entered into a written agreement (the Agreement) whereby Sprout agreed to issue Adelaar 600,000 shares of Series A stock at the price of $1.00 per share, in exchange for a total investment of $600,000. Declaration of Andrew W. Samaan (Andrew Samaan Decl.), ¶ 5, Exhibit A.

2. Specifically, the Agreement provides that as of May 8th, 2009, Adelaar "invested $600,000 (the "Investment") in Series A Preferred Stock (the "Stock") of Sprout at $1.00 per share (the "Purchase Price")". Andrew Samaan Decl., ¶ 7, Exhibit A.

3. The Agreement provides that in consideration of the Investment, Sprout is providing Adelaar with the following Investment protection:

1. Subject to the provisions of Paragraphs 2 and 3 hereof, in the event that the Company [Sprout] shall issue or sell additional shares of Stock for a consideration per share less than the Purchase Price on the Effective Date (as adjusted for stock dividends, subdivisions, combinations, recapitalizations and the like in effect immediately prior to the issuance or sale of such shares), then in such event, the Purchase Price shall be reduced, concurrently with such issue, to a Purchase Price equal to the net consideration per share of Stock received by the Company in respect of such issuance. An adjustment made pursuant to this paragraph shall be made on the next business day following the date on which any such issuance is made and shall be retroactive immediately after the close of business on such date.

Andrew Samaan Decl., ¶ 8, Exhibit A.

4. The Agreement states:

4. <u>Miscellaneous</u>. This Agreement shall be binding on the parties whose signatures appear below and their successors and assigns. This Agreement may be executed in counterparts. This Agreement may not be modified or amended except by an instrument in writing signed by the party against whom enforcement is sought. Either party may, by an instrument in writing, waive compliance by the other party with any term or provision of this Agreement. The waiver by a party of a breach of any provision of this Agreement shall not be a waiver of any subsequent breach. This Agreement sets forth the entire understanding of the parties with respect to the subject matter hereof. This Agreement shall be construed and governed in accordance with the internal, substantive laws of the State of New York.

Andrew Samaan Decl., ¶ 9, Exhibit A.

5. The Agreement provides antidilution protection within the A Series class of stock. Andrew Samaan Decl., ¶ 7, Exhibit A.

6. The Agreement is unambiguous. <u>See</u> Declaration of Peter S. Samaan (Peter Samaan Decl.), Exhibit B at 49:21-52:10, 93:23-94:5.

7. The Agreement contains a merger clause. Andrew Samaan Decl., ¶ 8, Exhibit A.

<u>RULE 56.1 STATEMENT - PAGE 2</u>

8.  Plaintiff signed the Agreement.  Andrew Samaan Decl., ¶ 13, Peter Samaan Decl., Exhibit B at 100:6 -101:2.

9.  Plaintiff is related by marriage to MacKenzie.  Peter Samaan Decl., Exhibit B at 19:4-6.

10. MacKenzie was terminated by Sprout for withholding important information from the Board of Directors and for furnishing the Board with inaccurate information.  Peter Samaan Decl., Exhibit C at 59:2-61:16; Peter Samaan Decl., Exhibit D.

11. Sprout never received or executed an instrument in writing, pursuant to paragraph 4 of the Agreement, modifying or amending the Agreement.  Andrew Samaan Decl., ¶ 14.

12. Sprout never received or executed an instrument in writing, pursuant to paragraph 4 of the Agreement, waiving compliance with any term or provision of the Agreement.  Andrew Samaan Decl., ¶ 15.

13. Adelaar made another $100,000 investment in Sprout in 2010 and did not even raise the issue of Full Ratchet.  Peter Samaan Decl., Exhibit B at 52:16-53:12.

14. Sprout never provided Adelaar with full ratchet anti-dilution protection across all classes of stock, but rather anti-dilution within his own class of stock.  Peter Samaan Decl., ¶ 4, Andrew Samaan Decl., ¶12.

15. Adelaar believes the term Full Ratchet and most-favored nations can be used interchangeably.  Peter Samaan Decl., Exhibit B at 26:18-27:2.

16. At the time of his initial investment in Sprout, Adelaar was busy as it was earnings season at work.  Peter Samaan Decl., Exhibit B at 37:17-40:20.

17. Despite Full Ratchet or most-favored nations being the single most important term of the deal to Adelaar, he has no recollection of transmitting to MacKenzie a single email or letter, or anything in writing indicating that his investment in Sprout was contingent on Full Ratchet or most favored nations, nor was he able to locate any such documents in his records.  Peter Samaan Decl., Exhibit B at 50:11-18, 85:17-87:10.

18. Adelaar orally conveyed to MacKenzie that he wanted stronger antidilution protections.  Adelaar thought that it was "pretty clear" from those conversations that MacKenzie understood what it was that he was looking for, even though he never specifically requested Full Ratchet or most-favored nations. Peter Samaan Decl., Exhibit B at 82:17-84:13.

19. Adelaar admits that he does not know the difference between Full Ratchet or most-favored nations and weighted-average antidilution protection.  Peter Samaan Decl., Exhibit B at 82:10-16.

20. MacKenzie testified he does not recall what specific language Adelaar used to request additional protections against dilution or down rounds in future rounds of financing, or what specific language Adelaar wanted in the Agreement, but took whatever language was used in that conversation and conveyed it to Andrew Samaan and Greg Torborg, and from that language they generated the Agreement.  MacKenzie reviewed and executed the Agreement having determined that it provided the protection that Adelaar was looking pursuant to their conversations.  Peter Samaan Decl., Exhibit C at 79:6-87:12.

21. In or around January 31, 2011, Adelaar learned that Sprout's Board of Directors (the Board) asked for and received MacKenzie's resignation and that the Board determined MacKenzie's financial forecasting to be in error, that he withheld important financial information from the Board, and that he furnished the Board with inaccurate information.  Although based on past experience, this type of information would have generated a response from Adelaar; he has no recollection of having any conversations with Max regarding the allegations.  Peter Samaan Decl., Exhibit B at 120:14-125:14.

22. In or around March 17, 2011, Adelaar learned that the Board alleged that MacKenzie approved the use of outdated pouches for the packaging of baby food and that he misappropriated $77,000 of corporate funds.  Although this type of information would have most likely generated a response from Adelaar; he has no recollection of having any conversations with Max regarding these allegations nor was he able to locate any documents indicating that he had a conversation with MacKenzie about the allegations.  Peter Samaan Decl., Exhibit B at 157:3-160:24.

23. Mr. MacKenzie testified that he could not recall telling the board of directors that Adelaar had full ratchet protection across all classes of stock.   Peter Samaan Decl., Exhibit C at 61:17-61:20.

24. Mr. MacKenzie testified that Adelaar's investment was not critical; any investor's money would have done.  Peter Samaan Decl., Exhibit C at 89:10-89:17.

25. Mr. MacKenzie testified that during his time with Sprout it was always in critical need of funds. Peter Samaan Decl., Exhibit C at 18:19-19:02.

26. Mr. Adelaar's two investments in Sprout one in 2009 and one in 2010 were both made during the time Mr. MacKenzie was the CEO. Peter Samaan Decl., Exhibit B at 52:16-52:25.

27. Mr. MacKenzie represented to another investor, Scott Schiff, that no investor had the protection alleged by Mr. Adelaar. Declaration of David "Scott" Schiff, ¶ 3.

28. In April 2011, Sprout represented to at least one other investor, the Ulrich Family, that no investor had better deal terms than those they had. Andrew Samaan Decl., Exhibit B at ¶ 4.

Dated:  June 7, 2013
        Uniondale, New York

                                        SPROUT FOODS, INC.


                                        By: /s/Peter S. Samaan (PS-4205)

Peter S. Samaan, Esq.
Linc C. Leder, Esq.

WESTERMANN SHEEHY KEENAN
SAMAAN & AYDELOTT, LLP
The Omni Bldg., Suite 702
333 Earle Ovington Blvd.
Uniondale, New York 11553
(516) 794-7500

Counsel for defendant,
Sprout Foods, Inc.


RULE 56.1 STATEMENT - PAGE 6