UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESSE ADELAAR,

                Plaintiff,

    -against-                        Case No.:  12-cv-3054 (FM)

SPROUT FOODS, INC.,

                Defendant.

## PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BERGER & WEBB, LLP
Steven A. Berger (SB-2038)
Jonathan Rogin (JR-9800)
7 Times Square, 27th Floor
New York, NY 10036
(212) 319-1900

*Attorneys for Plaintiff*

83427.1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

ARGUMENT ....................................................................................................................... 3

    SPROUT'S SUMMARY JUDGMENT MOTION SHOULD BE DENIED ............... 3

        I. The Legal Standard on Summary Judgment ............................................... 3

        II. There are Genuine Issues of Material Fact Precluding
            Summary Judgment in Sprout's Favor ....................................................... 5

        III. Plaintiff Does Not Have Unclean Hands .................................................... 8

CONCLUSION ..................................................................................................................... 9

83427.1

## TABLE OF AUTHORITIES

CASES

*American Express Bank Ltd. v. Uniroyal, Inc.,*
   164 A.D.2d 275, N.Y.S.2d 613 (1st Dep't 2010) .................................................. 6

*Celotex Corp. v. Catrett,*
   477 U.S. 317, 106 S. Ct. 2548 (1986) ................................................................. 4

*Chimart Assocs. v. Paul,*
   66 N.Y.2d 570 (1986) ........................................................................................ 5

*Donahue v. Windsor Locks Bd. Of Fire Comm'rs,*
   834 F.2d 54 (2nd Cir. 1987) ............................................................................... 4

*Gene Codes Forensics, Inc. v. City of New York,*
   812 F. Supp. 2d 295 (S.D.N.Y. 2011) ................................................................. 7

*Heyman v. Commerce & Industry Ins. Co.,*
   524 F.2d 1317 (2nd Cir. 1975) ........................................................................... 4

*Judge v. Buffalo,*
   524 F.2d 1231 (2nd Cir. 1975) ........................................................................... 4

*Schmitt v. Schmitt,*
   123 A.D.2d 617 (2nd Dep't 1986) ...................................................................... 9

*Winmar Co. v. Teachers Ins. & Annuity Ass'n of America,*
   870 F. Supp. 524 (S.D.N.Y. 1994) ..................................................................... 4

*Young v. Verizon's Bell Atlantic Cash Balance Plan,*
   615 F.3d 808 (7th Cir. 2010), *cert. denied,* 131 S. Ct. 2924 (2011) ..................... 6

RULES

CPLR § 213 ................................................................................................................ 9

FED. R. EVID. 801(c), 802 ........................................................................................... 7

FED. R. CIV. P. 56 ....................................................................................................... 7

Plaintiff Jesse Adelaar ("Plaintiff"), by his attorneys Berger & Webb, LLP, submits this memorandum of law in opposition to the motion for summary judgment filed by defendant Sprout Foods, Inc. ("Sprout"), along with his accompanying affidavit sworn to on December 10, 2012 (the "Adelaar Aff."), the accompanying declaration of Jonathan Rogin dated June 19, 2013 (the "Rogin Decl."), and the accompanying response to Sprout's Local Rule 56.1 statement.

## INTRODUCTION

Sprout's summary judgment motion should be denied. The essence of Sprout's motion is that the evidence developed through discovery establishes that there is no genuine issue of material fact as to either: (i) the existence of an oral agreement between Sprout and Plaintiff to afford his 2009 investment full ratchet anti-dilution protection; or (ii) the mistaken belief by both Plaintiff and Max MacKenzie, Sprout's President at the time, that the memorialization of this agreement prepared by Sprout's lawyer inaccurately limited the anti-dilution protection to a single class of stock.

Sprout's argument turns a blind eye to the actual testimony adduced during discovery in this case. Both Plaintiff and Mr. MacKenzie unequivocally testified that they agreed that as a condition for Plaintiff's $600,000 investment in Sprout, he would receive full ratchet anti-dilution protection. Both Plaintiff and Mr. MacKenzie unequivocally testified that when the written agreement was prepared by Sprout's lawyer, they reviewed it and believed that it set forth the foregoing oral agreement. Frankly, the only party who seems able to obtain summary judgment on these two critical issues is Plaintiff, not Sprout. For Sprout to argue that as a matter of law Plaintiff has not presented evidence to support his contract reformation claim, is illogical.

Rather than concede that the deposition testimony of Plaintiff and Mr. MacKenzie preclude Sprout from obtaining summary judgment, it attempts to distract the Court from this

83427.1

proper conclusion by attacking the witnesses' credibility and motivation (an improper exercise on a summary judgment motion) and by arguing a point which is neither in dispute nor of any significant relevance to this case – that a contract that appears unambiguous on its face cannot be supplemented by parol evidence. This basic legal tenet is not relevant to this action for one obvious reason – Plaintiff does not contend that the contract should be reformed because it is ambiguous. Rather, he contends that the contract should be reformed because of his and Mr. MacKenzie's mutual mistake. Sprout has not established – nor can it – that a plaintiff must first establish that a contract is ambiguous in order to succeed on a reformation claim predicated on mutual mistake. And, the law is clear that on a mutual mistake claim, evidence extrinsic to the contract at issue relating to the parties' intent is admissible.

For these reasons, and as described in greater detail below, Sprout's summary judgment motion should be denied.

## STATEMENT OF FACTS

For a detailed recitation of the facts in this action, Plaintiff refers the Court to his complaint and his affidavit filed herein, which was originally filed in opposition to Sprout's first summary judgment motion in this case. (*See* Rogin Decl., Ex. A; Adelaar Aff.) The most salient facts for purposes of this motion follow below.

On May 7, 2009, Plaintiff made a $500,000 investment in Sprout. (Adelaar Aff. ¶ 2.) Prior thereto, and as consideration for Plaintiff's investment, Mr. MacKenzie orally agreed, on behalf of Sprout, that as a condition for Plaintiff's investment, he would receive full ratchet anti-dilution protection. (*Id.* ¶¶ 2-3); (Rogin Decl., Ex. C [MacKenzie Deposition Transcript] at 14:19-16:17.) Approximately a month later, Plaintiff invested an additional $100,000 in Sprout, subject to the same agreement by Mr. MacKenzie on Sprout's behalf. (Adelaar Aff. ¶ 4.) This

83427.1

means that, in the event of subsequent stock issuances by Sprout at a share price lower than $1.00 (the per share price of the Sprout stock purchased by Plaintiff): (i) the share price for Plaintiff's investment would be reduced retroactively to the same lower price of such subsequently issued stock; and (ii) Plaintiff would be issued additional shares of Sprout for his prior $600,000 investment so that the value of my investment in Sprout would remain at $600,000 notwithstanding the decrease in the value of Sprout's stock. (*Id.* ¶ 2.)

When Sprout's lawyers attempted to memorialize this agreement, the writing they drafted erroneously provided Plaintiff only limited anti-dilution protection. (Adelaar Aff. ¶ 6.) Specifically, the written agreement limited the anti-dilution protection afforded Plaintiff to Series A stock issuances (the round in which he initially purchased), but not to future rounds of stock issuances by Sprout, such as the Series B, Series C and Series D issuances described in the Complaint. (*Id.*; Complaint ¶¶ 23-28.) Plaintiff signed the written agreement not understanding that his anti-dilution rights had been limited in this regard. Rather, he signed the agreement believing that it reflected his agreement with Sprout (via Mr. MacKenzie) that Plaintiff's investment in Sprout would receive full ratchet anti-dilution protection. (Adelaar Aff. ¶ 7.) Mr. MacKenzie was under the same mistaken belief when he signed the written agreement on Sprout's behalf. (Rogin Decl., Ex. C at 22:19-23:15.)

**ARGUMENT**

**SPROUT'S SUMMARY JUDGMENT MOTION
SHOULD BE DENIED**

I.     **The Legal Standard on Summary Judgment**

The Second Circuit aptly described the substantial burden facing a movant for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, almost 40 years ago in

*Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317 (2nd Cir. 1975). In that case, the Court stated as follows:

> "The Federal Rules of Civil Procedure provide several tools to aid in ascertaining the facts before the curtain ascends on a trial . . . . One such 'tool' is the Rule 56 summary judgment procedure which enables the court to determine whether the 'curtain' should rise at all. . . . [O]n a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues to be tried. . . . Moreover, when the court considers a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought . . . with the burden on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. . . . This rule is clearly appropriate, given the nature of summary judgment. This procedural weapon is a drastic device since its prophylactic function, when exercised, cuts off a party's right to present his case to a jury.

*Id.* at 1319-20 (citations omitted).

Summary judgment "must . . . be used selectively to avoid trial by affidavit." *Windsor Locks*, 834 F.2d at 58 (citing *Judge v. Buffalo*, 524 F.2d 1231 (2nd Cir. 1975)). "As long as the plaintiff has adduced sufficient facts to substantiate the elements of his claim, summary judgment is inappropriate." *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2nd Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986)). "[T]he presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of summary judgment." *Winmar Co. v. Teachers Ins. & Annuity Ass'n of America*, 870 F. Supp. 524, 535 (S.D.N.Y. 1994) (citation omitted).

Measured against these strict standards, it is plain that Sprout's summary judgment motion must fail.

## II.  There Are Genuine Issues of Material Fact Precluding Summary Judgment In Sprout's Favor

New York's Court of Appeals has held that "mutual mistake . . . may furnish the basis for reforming a written agreement. . . . [and that] [i]n a case of mutual mistake, the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement." *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 573 (1986) (citations omitted).  Moreover, "[b]ecause the thrust of a reformation claim is that a writing does not set forth the actual agreement of the parties, generally neither the parol evidence rule nor the Statute of Frauds applies to bar proof, in the form of parol or extrinsic evidence, of the claimed agreement." *Id.* (citations omitted).

As set forth above, both Plaintiff and Mr. MacKenzie have testified that they agreed that Plaintiff's investment would receive full ratchet anti-dilution protection, and that they were both unaware that the written agreement prepared by Sprout's lawyer did not reflect their oral agreement to such effect.  This testimony by both parties as to the oral agreement reached and as to what they believed was set forth in the written document they signed establishes, at a bare minimum, a genuine issue of material fact warranting denial of Sprout's motion for summary judgment dismissing Plaintiff's reformation claim without a trial.

Sprout attempts to distract the Court from this conclusion by making several irrelevant and/or inaccurate arguments.  First, Sprout tries to recast Plaintiff's claim as one based in contractual ambiguity, in an effort to convince the Court that it is not allowed to consider Plaintiff's or Mr. MacKenzie's testimony at all.  (Sprout Br. at 6-7, 9-11.)  In fact, Plaintiff's "mutual mistake" claim does not require Plaintiff to first establish or even allege that the written agreement is ambiguous.  This argument by Sprout is nothing but a straw man.  Similarly irrelevant is the case law cited by Sprout for the unremarkable proposition that contracts should

be enforced according to their terms. Not surprisingly, the cases cited by Sprout for this proposition were not "mutual mistake" cases. *See, e.g., American Express Bank Ltd. v. Uniroyal, Inc.*, 164 A.D.2d 275, 562 N.Y.S.2d 613 (1st Dep't 2010) (Sprout Br. at 10-11.)

Sprout next argues that Plaintiff's claims should be dismissed before trial because he will not be able to satisfy the clear and convincing standard governing contract reformation claims, a general proposition that Plaintiff does not dispute. (Sprout Br. at 12-15.) In making this argument, however, Sprout also relies legally upon a 7th Circuit decision for the proposition that the Court here should not consider testimony of interested parties. (Sprout Br. at 12, citing *Young v. Verizon's Bell Atlantic Cash Balance* Plan, 615 F.3d 808 (7th Cir. 2010), *cert.* denied, 131 S. Ct. 2924 (2011)). The Court in *Young* was specifically addressing a claim to reform a pension plan and addressed the effect of specific ERISA provisions on such a claim. Thus, that case is easily distinguishable from this case and does not require the Court to ignore the two main witnesses' testimony here.

Sprout makes additional and misplaced factual arguments in support of its assertion that Plaintiff will not be able to meet his evidentiary burden. These arguments include the following: (i) Plaintiff and Mr. MacKenzie are related by marriage; (ii) Plaintiff and Mr. MacKenzie are both sophisticated investors; and (iii) Mr. MacKenzie resigned from Sprout at the board of directors' request because of alleged improprieties. The first argument might theoretically have relevance to the Court's evaluation of Mr. MacKenzie's credibility as a witness at trial, but Sprout has established no basis for its implication that a familial relationship precludes a reformation claim. Regarding Sprout's second point regarding the sophistication of the parties to the agreement, Sprout ignores that: (i) Plaintiff testified that his Sprout investment was the first he had ever made in a private company (Rogin Decl., Ex. B at 4-12); and (ii) Mr. MacKenzie

6

testified that prior to Sprout, none of the companies which he owned or ran had any investors. (Rogin Decl., Ex. C at 52.) Thirdly, that Mr. MacKenzie was asked to resign at least in part because of alleged failure to disclose certain material information to the board does not support Sprout's defense, but rather, if anything, demonstrates that Mr. MacKenzie might have had a practice of failing to disclose to the board certain of his actions taken as President of Sprout with actual and/or apparent authority.

Finally, Sprout relies upon representations it allegedly made to two other investors as evidence that Mr. MacKenzie did not make the agreement with Plaintiff that they both testified to making. First, Sprout submitted a declaration from David Schiff, another Sprout investor, who in his declaration recounts a conversation with Mr. MacKenzie in October 2010, during which Mr. MacKenzie allegedly made statements which contradict Plaintiff's understanding of the written agreement. (Schiff Decl. ¶ 3.) These factual assertions as to what Mr. MacKenzie said to Mr. Schiff are inadmissible hearsay and cannot be considered on this motion. *See* FED. R. EVID. 801(c), 802; FED. R. CIV. P. 56(c)(2)(4). *See also Gene Codes Forensics, Inc. v. City of New York*, 812 F. Supp. 2d 295, 306 (S.D.N.Y. 2011) (holding that affidavit which stated what another person had told affiant "is hearsay and not admissible pursuant to any hearsay exception") (citations omitted). Even if admissible, at most the Schiff declaration would go to the weight of Mr. MacKenzie's testimony, something which is not properly to be determined on summary judgment.

Second in this regard, Sprout attaches to its motion a letter dated April 25, 2011 signed by its current President, Ron Davis, to a family of investors named Ulrich. That letter purports to represent that no other investor had a deal on better investment terms than the Ulrichs were getting. (*See* Andrew Samaan Decl., Ex. B.) Mr. Davis was not present for any of the

7

83427.1

conversations between Plaintiff and Mr. MacKenzie during which the alleged oral agreement was reached, nor was he involved in the drafting of the memorialization thereof. What he wrote to another investor almost two years later has no bearing on the Court's determination of what happened in May 2009.[1]

### III. Plaintiff Does Not Have Unclean Hands

Sprout also argues that it is entitled to summary judgment because of Plaintiff's unclean hands. Specifically, Sprout contends that because Plaintiff did not promptly discover the mutual mistake made by him and Mr. MacKenzie, but rather waited until the Series B, C and D stock offerings to make a claim for full ratchet anti-dilution protection, his hands are somehow unclean. (Sprout Br. at 18-19.)

This is a wholly illogical argument. Given that both Plaintiff and Mr. MacKenzie understood the agreement to provide for full ratchet anti-dilution protection, Plaintiff would have had no reason to think otherwise until the time came when Sprout actually refused to provide this protection under circumstances that warranted it. This plainly did not occur until Sprout, by letter dated March 17, 2011, communicated that the price per share for the Series B offering would be reduced in a manner that would have triggered Plaintiff's anti-dilution rights. (Adelaar Aff. ¶ 9 and Ex. A.) Shortly thereafter, on April 7, 2011, Plaintiff sent a letter to Sprout asserting his full ratchet anti-dilution rights. (Adelaar Aff. ¶ 10 and Ex. B.) On April 11, 2011, Plaintiff met with the Chairman of Sprout's Board of Directors, who communicated that it was Sprout's

---

[1] On this point, in light of the fact that Plaintiff had raised with Sprout his claim for full ratchet rights at a meeting held on April 11, 2011 (*see* Adelaar Aff. ¶ 11), it is surprising that Mr. Davis would sign a letter to another investor two weeks later, on April 25, 2011, stating that no one at the time had investment terms better than the Ulrichs were getting. Only Sprout knows whether its position in this litigation is being dictated by a concern that its representation to the Ulrichs (and perhaps other investors) was improperly made without a disclosure of Plaintiff's claim known to exist at the time.

8

83427.1

position that the written agreement at issue did not provide Plaintiff with full-ratchet anti-dilution rights. (Adelaar Aff. ¶ 11.)

Sprout offers no basis whatsoever to conclude that Plaintiff should have discovered the mistake before he did. And, as New York law provides for a six-year statute of limitations for reformation of contract, Plaintiff quite obviously has acted in a timely manner. *See Schmitt v. Schmitt*, 123 A.D.2d 617 (2nd Dep't 1986); CPLR § 213.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court enter an order: (i) denying Sprout's summary judgment motion in its entirety; and (ii) granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
      June 19, 2013

                        BERGER & WEBB, LLP

                        By: _____
                              Steven A. Berger (SB-2038)
                              Jonathan Rogin (JR-9800)

                        *Attorneys for Plaintiff*
                        7 Times Square, 27th Floor
                        New York, New York  10036
                        212-319-1900
                        sberger@bergerwebb.com
                        jrogin@bergerwebb.com

83427.1